IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs April 8, 2026

**STATE OF TENNESSEE v. JARVIS JONES**

**Appeal from the Criminal Court for Shelby County**
**No. 24-02204, 22-04719    Chris Craft, Judge**

————————————————————

**No. W2025-00735-CCA-R3-CD**

————————————————————

The Defendant, Jarvis Jones, appeals from the order of the trial court revoking his probation. He argues that trial court failed to properly adhere to the two-step consideration for probation revocation and, as a result, abused its discretion in revoking his probation. Upon review, we conclude that the trial court did not abuse its discretion in revoking the Defendant's probation and that the record, considered as a whole, supports full revocation as the appropriate consequence. Accordingly, we affirm the judgment of the trial court.

**Tenn R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, P.J., and JOHN W. CAMPBELL, SR., J., joined.

William Price Rudolph, Memphis, Tennessee (on appeal); C. Alex Jones, Memphis, Tennessee (at trial), for the appellant, Jarvis Antonio Jones.

Jonathan Skrmetti, Attorney General and Reporter; Julia A. Johnson, Assistant Attorney General; Steve Mulroy, District Attorney General; and Alexia Crump and Timothy Dye, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

On January 9, 2025, the Defendant entered a guilty plea to aggravated burglary, possession of a firearm as a convicted felon, theft of property in an amount equal to or greater than $10,000 but less than $60,000, child abuse and neglect, and intentionally evading arrest in an automobile. He received an effective eight-year sentence to be served on supervised probation. The judgments stated "No PSRS." On February 21, 2025, the State issued a warrant alleging that the Defendant had violated his probation by incurring

new criminal charges of especially aggravated kidnapping, aggravated assault, domestic assault, evading arrest to-wit auto, and escape. The probation violation report issued by the Tennessee Department of Correction listed the Defendant's probation violations as follows:

> Offender is in violation of Rule No. 1 which states: "I will obey the laws of the United States, or any State in which I may be, as well as any municipal ordinances."

> [The Defendant] violated Rule #1 in that he was arrested on 2/20/2025 on charges of Especially Aggravated Kidnapping, Aggravated Assault, Domestic Assault, Evading Arrest To Wit: Auto and Escape. The charges are pending filing in General Sessions Division 10. Bond has not been set as of the writing of this report. [The Defendant] is in custody at the Shelby County Criminal Justice Center.

> Offender is in violation of Rule No. 14, which states: "I will not engage in any assaultive, abusive, threatening or intimidating behavior. Nor will I participate in any criminal street gang related activities as defined by T.C.A. 40-35-121. I will not behave in a manner that poses a threat to others or me."

> [The Defendant] violated Rule #14 in that he has been arrested and charged with the offenses of Aggravated Assault and Domestic Assault reflecting his engagement in assaultive, abusive, threatening and/or intimidating behavior.

A revocation hearing was held on April 8, 2025. Debra Irvine, a court specialist for the State of Tennessee Probation and Parole Office, testified that her office supervised the Defendant on probation. Ms. Irvine stated that the Defendant violated Rule 1 of his probation by being arrested for especially aggravated kidnapping, aggravated assault, domestic assault, evading arrest to-wit auto, and escape. Ms. Irvine also stated that the Defendant violated Rule 14 of his probation by engaging in assaultive, abusive, threatening, or intimidating behavior, as evidenced by his charges.

Officer Gregory Lee, a police officer with the Memphis Police Department ("MPD"), testified that he was dispatched to a domestic disturbance on February 20, 2025. While driving eastbound on a street one block from the reported address, a woman "flagged [him] down" and stated that "she was choked out" and "that her baby daddy had took her car and her baby."[1] Officer Lee observed that the victim was "crying [and] hysterical[,]"

---

[1] We note that the term "baby daddy" may be considered derogatory by some, and we intend no disrespect in its use. We employ the term only because it is how the victim identified the Defendant.

and that her neck appeared red and bruised. The victim stated that the Defendant had taken her child, phone, keys, and vehicle. She pointed to a black Mazda with tinted windows and red tape on the back, which was stopped directly in front of Officer Lee's car and facing westbound. Officer Lee stated that he attempted to initiate a traffic stop on the Mazda with his emergency lights and siren activated. He said that the Defendant initially began to slow down as if he were going to pull over but then began "to speed and started fleeing the scene[.]" Officer Lee stated that he did not pursue the vehicle because the victim reported that there was a child inside. Officer Lee identified the Defendant at the revocation hearing as the individual who was arrested on the scene.

On cross-examination, Officer Lee stated that, due to the vehicle's tinted windows, he was unable to see the driver or determine whether a child was inside. After ending his pursuit of the Defendant, Officer Lee returned to the scene to speak to the victim. He stated that the victim's mother also came to the scene and was able to track the victim's phone that was inside of the vehicle. Officer Lee said that, while at the scene, the victim saw that her vehicle had returned to the scene and identified the Defendant, who was still driving the vehicle. The Defendant was ultimately arrested.

Memphis Police Officer Jamiraqua Jones testified that, while in custody, the Defendant complained of pain in his leg and requested medical attention. The Memphis Fire Department examined the Defendant and recommended that he go to the hospital. Officer Jones stated that she transported the Defendant to the hospital because he declined transport by the fire department. Officer Jones said that when they arrived at the hospital, the Defendant, who had slipped out of his handcuffs, "bail[ed] out" as "soon as [she] open[ed] the back door" of her patrol vehicle. Officer Jones engaged in a foot pursuit and unsuccessfully deployed her taser while verbally instructing the Defendant to stop running, but the Defendant refused. Officer Jones stated that other officers apprehended the Defendant approximately two minutes from where he fled and took him back into custody. Officer Jones identified the Defendant at the revocation hearing as the individual who she transported to the hospital and attempted to escape and evade arrest.

At the close of proof, the trial court determined that the Defendant had violated his probation. The trial court found that the Defendant engaged in the same conduct that he had in the underlying case—evading arrest. In a written order, the trial court ordered the Defendant to serve the remainder of his effective eight-year sentence in confinement. The trial court gave the Defendant jail credits for March 12, 2025, to April 8, 2025. The Defendant filed a timely notice of appeal.

## ANALYSIS

On appeal, the Defendant asserts that the trial court failed to properly adhere to the two-step consideration for probation revocation and, as a result, abused its discretion in revoking his probation. He submits that the trial court failed to adequately state its reasoning for finding that the Defendant violated his probation and for determining the consequence, such that its ruling must be reviewed de novo. The Defendant does not argue that he is entitled to a non-incarcerative sentence, and he did not put forth any proof of mitigation at the revocation hearing in support thereof. Much like the argument presented to the trial court, the Defendant focuses solely on the "elements" of the new offenses and asserts that the State failed to establish his identity as the perpetrator of the new offenses. In response, the State contends that the trial court sufficiently explained its reasoning for finding that the Defendant violated his probation. The State also argues that it "proved by a preponderance of the evidence that the defendant violated the terms of his supervision because he was arrested on new charges and twice attempted to evade arrest."

Appellate courts review a trial court's revocation of a defendant's probationary sentence under an abuse of discretion standard with a presumption of reasonableness, "so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." State v. Dagnan, 641 S.W.3d 751, 759 (Tenn. 2022). "It is not necessary for the trial court's findings to be particularly lengthy or detailed but only sufficient for the appellate court to conduct a meaningful review of the revocation decision." Id. (citing State v. Bise, 380 S.W.3d 682, 705-06 (Tenn. 2012)). Sufficient findings serve "'to promote meaningful appellate review and public confidence in the integrity and fairness of our judiciary.'" Id. (quoting State v. King, 432 S.W.3d 316, 322 (Tenn. 2014)). However, if the trial court fails to place such reasoning on the record, "the appellate court may conduct a de novo review if the record is sufficiently developed for the court to do so, or the appellate court may remand the case to the trial court to make such findings." Id.

"[P]robation revocation is a two-step consideration on the part of the trial court." Dagnan, 641 S.W.3d at 757. First, the trial court must determine whether to revoke probation. Id. at 753. Second, the trial court is to determine the appropriate consequence to impose upon revocation. Id. While a trial court is required to conduct a probation revocation hearing pursuant to Tennessee Code Annotated section 40-35-311(b), this two-step consideration does not obligate the trial court "to hold an additional or separate hearing to determine the appropriate consequence." Id. Importantly, these are "two distinct discretionary decisions, both of which must be reviewed and addressed on appeal." Id. at 757-58. "Simply recognizing that sufficient evidence existed to find that a violation occurred does not satisfy this burden." Id. at 758.

In considering the appropriate consequence to impose upon revocation, a trial court may consider, but is not limited to, the following: the number of revocations, the

seriousness of the violation, the defendant's criminal history, and the defendant's character. Id. at 759 n.5. Consideration of past criminal history is only appropriate in the second part of the two-step analysis. Id. "[T]he consequence determination essentially examines whether the beneficial aspects of probation are being served and whether the defendant is amenable to continued probation." State v. Rand, 696 S.W.3d 98, 106 (Tenn. Crim. App. 2024) (citing State v. Robinson, No. M2022-00248-CCA-R3-CD, 2022 WL 17335656, at *4 (Tenn. Crim. App. Nov. 30, 2022)). As the supreme court observed in Dagnan, a trial court may consider factors relevant to the nature and seriousness of the present violation, the defendant's previous history on probation, and the defendant's amenability to future rehabilitation. See Dagnan, 641 S.W.3d at 759 n.5. Factors important to a defendant's amenability to rehabilitation "may include the defendant's acceptance of responsibility and genuine remorse, as well as whether the defendant will comply with orders from the court meant to ensure his or her effective rehabilitation." Rand, 696 S.W.3d at 106; Tenn. Code Ann. § 40-35-102(3)(C) (2019). A trial court may also consider whether the defendant poses a danger to the community or individuals in it. See Tenn. Code Ann. § 40-28-302(1).

After determining that a defendant "has violated the conditions of probation and suspension by a preponderance of the evidence, the trial judge shall have the right . . . to revoke the probation and suspension of sentence and cause the defendant to commence the execution of the judgment as originally entered, or otherwise in accordance with § 40-35-310." Tenn. Code Ann. § 40-35-311(e) (2012). Probation revocation rests within the sound discretion of the trial court, and this court will not disturb the trial court's ruling absent an abuse of that discretion. State v. Shaffer, 45 S.W.3d 553, 554 (Tenn. 2001) (citing State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991)). To establish an abuse of discretion, "there must be no substantial evidence to support the conclusion of the trial court that a violation of the conditions of probation has occurred." Id. (citing Harkins, 811 S.W.2d at 82). Once the trial court decides to revoke a defendant's probation, it may (1) order confinement; (2) order the sentence into execution as initially entered; (3) return the defendant to probation on modified conditions as necessary; or (4) extend the probationary period by up to two years. See State v. Hunter, 1 S.W.3d 643, 646-47 (Tenn. 1999) (citations omitted); State v. Larry Lee Robertson, No. M2012-02128-CCA-R3CD, 2013 WL 1136588, at *2 (Tenn. Crim. App. Mar, 19, 2013); State v. Christopher Burress, No. E2012-00861-CCA-R3-CD, 2013 WL 1097809, at *6 (Tenn. Crim. App. Mar. 18, 2013); Tenn. Code Ann. §§ 40-35-308, -310, -311 (2012).

The Defendant argues that the trial court failed to adequately state its reasoning in finding that the Defendant violated his probation and failed to articulate its reasoning for the consequence determination. The extent of the trial court's reasoning for revoking the Defendant's probation was as follows:

Well my concern is he is on probation for evading arrest from the police for taking off. The facts of that case from his presentence report and the affidavit in that case were that the police chased him, turned on their blue lights and he took off. And they had to abandon the chase because they didn't want to hurt anyone else. I find that he's done the same thing this time, according to the officer. So I'm going to show his probation violated.

First, we address the trial court's decision to revoke the Defendant's probation. A trial court may revoke a defendant's probation upon finding, by a preponderance of the evidence, that the defendant violated the conditions of the sentence. Tenn. Code Ann. § 40-35-311(e) (2012). Here, the record shows that the trial court implicitly credited the testimony of the State witnesses and revoked the Defendant's probation based on a new arrest for evading police. We conclude that the trial court placed sufficient, albeit brief, findings and reasoning for its decision to revoke Defendant's probation on the record. Dagnan, 641 S.W.3d at 759 ("It is not necessary for the trial court's findings to be particularly lengthy or detailed but only sufficient for the appellate court to conduct a meaningful review of the revocation decision.). Accordingly, the trial court did not abuse its discretion in revoking the Defendant's probation.

Even if the trial court's findings regarding the violation determination were inadequate, a de novo review of the record establishes sufficient evidence to support the trial court's decision to revoke the Defendant's probation. Here, the Defendant argues that the officers' testimony alone is insufficient to establish by a preponderance of the evidence that he violated his probation, and that "corroborating evidence in the form of the other officers' eyewitness testimony or a video is necessary[.]" He insists that the State failed to establish his identity as the perpetrator of the new offenses. We disagree.

The State's proof at the revocation hearing showed that an officer responded to a domestic violence dispute and the female victim, with visible injuries to her neck, told him that her child's father had taken her car and her baby. The female victim pointed to the car, the officer attempted to make a traffic stop, and the Defendant fled the scene in the car. The location of the car was being tracked from the female victim's phone, which was inside the car. The Defendant returned to where the female victim was located about an hour and a half later. While pointing at the Defendant, the female victim told the officer, "[T]hat's my baby daddy" in the car, and the Defendant was arrested. This officer identified the Defendant at the revocation hearing as the individual in the car who was ultimately arrested. After feigning leg pain, another officer was called to the scene to transport the Defendant to the hospital, and the Defendant escaped from her custody and again attempted to flee. She too testified at the revocation hearing and identified the Defendant as the individual she transported from the scene to the hospital and who ultimately escaped from

handcuffs, evaded custody, and fled the scene. In short, the State's proof established that the Defendant fled from a traffic stop in a vehicle after an officer activated his lights and sirens, endangering others, and later escaped custody at the hospital by slipping out of his restraints and running despite commands to stop. This is more than sufficient proof to establish the Defendant's identity as the perpetrator of the new offenses by a preponderance of the evidence. Accordingly, the record supports the trial court's determination that the Defendant violated the terms of his probation.

Next, the Defendant argues that the trial court failed to adequately state its reasoning for the consequence determination. Here, we agree with the Defendant, and conclude that the trial court failed to engage in the appropriate consequence determination for probation revocation.

In this case, the Defendant entered a guilty plea to aggravated burglary, possession of a firearm as a convicted felon, felony theft of property, child abuse and neglect, and intentionally evading arrest in an automobile and was placed on supervised probation for an effective eight-year term on January 9, 2025. Forty-two days later, on February 20, 2025, he was rearrested on charges of especially aggravated kidnapping, aggravated assault, domestic assault, and evading arrest. Based on our de novo review of the record, we conclude that the Defendant is not amenable to future rehabilitation based on three interrelated considerations: his extensive prior criminal history, his repeated failure to respond to earlier rehabilitative efforts, and the seriousness and nature of the new conduct occurring while on supervised probation.

First, we observe that the Defendant's prior criminal history demonstrates a longstanding pattern of criminal conduct. The Defendant's presentence report shows a lengthy and varied criminal history spanning more than a decade, beginning at age 18, and including convictions for aggravated burglary, multiple thefts, child abuse and neglect, contributing to the delinquency of a minor, assault, vandalism, weapons offenses, reckless driving, and multiple instances of evading arrest (including both vehicle flight and flight on foot). The report reflects numerous additional arrests and dismissed charges. This sustained pattern demonstrates entrenched criminal behavior rather than isolated lapses. The Tennessee Correctional Records also confirmed the Defendant as a suspected CRIPS gang member; however, the Defendant denied being a member of any gang.

Next, the Defendant has failed to respond to prior rehabilitative efforts. The Defendant self-reported in presentence report that he participated in treatment programs during his incarceration. The Defendant also previously received the benefit of a suspended sentence and community-based supervision, including an eight-year effective sentence that the trial court entirely suspended to probation in January 2025. Despite these opportunities, he repeated the same type of dangerous conduct for which he was already

- 7 -

on probation: evading arrest in a vehicle.  See State v. Tobin, No. E2022-00604-CCA-R3-CD, 2023 WL 176108, at *4 (Tenn. Crim. App. Jan. 9, 2023) (recognizing that repeated criminal conduct of a similar nature "shows that the Defendant cannot or will not abide by the first rule of probation: maintaining lawful conduct") (citations omitted), no perm. app. filed.  The trial court highlighted this precise concern—the presentence report showed that his prior case involved fleeing law enforcement with activated blue lights, causing officers to abandon the pursuit for public safety reasons, and he "did the same thing this time."  More importantly, the STRONG-R risk assessment further classified him as a high-risk offender, identifying high criminogenic needs, including aggression, attitudes/behaviors, mental health, residential instability, and prior violent conduct, all of which indicate limited responsiveness to rehabilitation.  This assessment is consistent with the Defendant's lengthy record and his demonstrated inability to comply with conditions of release.

Finally, within weeks of being placed on supervised probation, the Defendant was arrested for especially aggravated kidnapping, aggravated assault, domestic assault, evading arrest, and escape.  These new offenses are non-technical violations that involve violence, risk to children, and deliberate attempts to avoid lawful custody, and they strongly undermine any claim of amenability to continued community supervision.  As alluded to by the trial court, the consistent theme of evading arrest shows a recurrent pattern of fleeing police, escalating in seriousness (e.g., fleeing from moving vehicles, escaping custody).  This reflects poor impulse control, risk-taking, and an unwillingness to comply with supervision.

Taken together, the Defendant's extensive criminal history, repeated opportunities for non-incarcerative sentencing, lack of behavioral improvement, high-risk assessment, and his commission of new violent and dangerous offenses while on supervised probation support the finding that he is not amenable to future rehabilitation and that further community-based measures are unlikely to be effective.  Accordingly, we conclude that full revocation of his suspended sentence was proper.

## CONCLUSION

Upon review, we affirm the judgments of the trial court.

s/ **Camille R. McMullen**

CAMILLE R. MCMULLEN, JUDGE